IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVE R. BRASHEARS on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 02-1534-KAJ |
| 1717 CAPITAL MANAGEMENT, NATIONWIDE MUTUAL INSURANCE CO. d/b/a NATIONWIDE PROVIDENT, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

---

David A. Jenkins, Esq., Smith Katzenstein & Furlow LLP, 800 Delaware Avenue, Wilmington, Delaware 19801; Counsel for Plaintiff.
    Of Counsel: R. Stephen Berry, Esq., Berry & Leftwhich, Washington, D.C.
    Mark. A. Avera, Esq., Avera & Avera, Gainesville, Florida
    Charles M. Jones, Esq., Jones, Osteen, Jones & Arnold, Hinesville, Georgia
    Steven Benz, Esq., Silvija Strikis, Esq., Thomas P. Kelly, Esq., Kellogg, Huber, Hansen, Todd & Evans, Washington, D.C.

Martin S. Lessner, Esq., Young, Conaway, Stargatt & Taylor, 1000 West Street, 17th Floor, Wilmington, Delaware 19801; Counsel for Defendants.
    Of Counsel: Jay H. Calvert, Jr., Esq., Karen Pieslak Pohlmann, Esq., Morgan, Lewis & Bockius, LLP, Philadelphia, Pennsylvania.

---

October 13, 2005
Wilmington, Delaware



JORDAN, District Judge

I. **INTRODUCTION**

Before me is a motion for leave to file a second amended complaint (Docket Item ["D.I."] 39; the "Motion") filed by Plaintiff Dave R. Brashears on behalf of himself and all others similarly situated ("Brashears"). The Complaint alleges that Defendants 1717 Capital Management and Nationwide Mutual Insurance Co. d/b/a Nationwide Provident ("Defendants") violated § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10(b)-5 through their insurance sales practices. Jurisdiction is appropriate under 28 U.S.C. §§ 1331 and 1337. For the reasons set forth below, I will deny Brashears's motion.

II. **BACKGROUND**[1]

Much of the background of this case is set out in the Memorandum Opinion (D.I. 38) dismissing the first amended complaint, and will not be repeated here. However, in the proposed Second Amended Complaint, Brashears sets out additional facts that bear mention.

In his proposed Second Amended Complaint, as in the earlier versions of his complaint, Brashears claims that Defendants had a marketing plan in which they instructed their agents not to disclose the existence of an Additional Insurance Benefit Rider (the "AIB rider"), a potentially less expensive option for customers, unless the agent felt that a sale was threatened.[2] (D.I. 39 at ¶ 25.) Brashears states that this

---

[1] The following statement of facts is drawn from the Second Amended Complaint and does not constitute findings of fact.

[2] Brashears refers to a base policy with the AIB rider as a "low cost" or "lower cost" policy, while he refers to the base policy alone as a "high cost" or "higher cost"

instruction was given at a series of meetings held by Defendants for their agents throughout the country, and notes that a number of Defendants' executives were present at one particular meeting in New Jersey where this instruction was given. (*Id.* at ¶¶ 21-23.) The proposed amended pleading gives significantly greater specificity as to the "who, what, when, where, and how" of the alleged unlawful activity. Citing specific testimony given in another lawsuit, Brashears alleges that Defendants were advised that the marketing plan was improper, that some of the executives recognized a "moral" issue with respect to the plan, and that it "put them in a compromising situation as to their ethical duties and duties under securities laws." (*Id.* at ¶¶ 29-35.) Brashears claims that Defendants gave written instructions that employees were forbidden from "raising any concerns about such marketing instructions with external regulators, such as the Securities and Exchange Commission." (*Id.* at ¶ 34.)

Brashears also alleges that the Prospectus and other marketing materials[3] provided by Defendants to potential customers omitted material facts. (D.I. 39 at ¶¶ 74-91.) For example, Brashears states that in the marketing materials Defendants provided to their prospective customers, the list of riders did not mention the AIB rider. (*Id.* at ¶ 74.) Although Brashears notes that Defendants did disclose the availability of the AIB rider in the Prospectus, he claims that the rider was not fully described. (*Id.* at ¶

---

policy. (*See, e.g.*, D.I. 39 at ¶¶ 4-5.) For the reasons discussed below and in the May 21, 2004 Memorandum Opinion, Brashears is incorrect in asserting that there are low cost and high cost versions of the same policy. (D.I. 38 at 12-13; *infra* at 7-8.) Instead, there is a base policy, and various riders, all of which appear to have different costs and benefits. (*See infra* at 7-8.)

[3] These marketing materials appear to include the "Options Premier Illustration" and a brochure entitled "Options Premier." (D.I. 39 at ¶ 79.)

84.) Instead, according to Brashears, the Prospectus directed potential customers to consult their agent regarding the AIB rider. (*Id.*) According to Brashears, Defendants had already instructed these agents not to provide information on the rider unless the agent felt that there was a danger of losing a sale. (*Id.*)

Brashears further claims that Defendants failed to explain to their customers how sales commissions were calculated. (D.I. 39 at ¶¶ 78-80, 85.) Although he acknowledges that the Prospectus states that the cost of the AIB rider is "generally . . . lower than the current cost of insurance rates on the Policy's net amount of risk," Brashears claims that this is not enough to disclose the benefit of purchasing the rider. (*Id.* at ¶ 88.) In fact, Brashears alleges that the Prospectus does not explain that an agent can reduce the cost of a policy through the use of the rider. (*Id.* at ¶¶ 86-87.)

### III.  STANDARD OF REVIEW

Leave to amend a complaint is governed by Federal Rule of Civil Procedure 15 ("Rule 15"). A party can amend a pleading freely before responsive pleading is served, but once that time has past, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend is generally given freely, as the rule directs; however, when a proposed amendment would be futile, leave should be denied. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Efforts to amend are futile when the claim as amended would itself be futile because it would fail to state a basis for relief. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

The same standard of legal sufficiency as applies to reviewing a complaint on a motion to dismiss applies to a determination of futility. *Id.*

That standard is heightened in a case alleging securities fraud. A securities fraud case under Section 10(b)(5) and Rule 10b-5 is subject to the pleading standard of Federal Rule of Civil Procedure 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "This particularity requirement has been rigorously applied in securities fraud cases." *In re Burlington Coat Factory*, 114 F.3d at 1417 (citations omitted). The Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 et seq. (the "PSLRA") also raises the pleading bar. "[B]y enacting the current version of the [PSLRA], 'Congress expressly intended' to 'substantially heighten' the existing pleading requirements." *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)). The extra pleading burden imposed by Rule 9(b) and the PSLRA, however, has not changed the requirement that well-pleaded allegations in the complaint must be taken as true. *See In re Rockefeller Ctr. Prop.*, 311 F.3d at 215.

Defendants argue that leave to amend is not freely granted under the PSLRA, and that a different standard for leave to amend applies than the standard under Rule 15. (D.I. 44 at 4-6.) Defendants cite a number of cases for this proposition, but, as I read them, they simply emphasize that the PSLRA heightens the pleading requirement and that leave to replead can be denied where amendment of the complaint would be futile. *See, e.g., In re NAHC, Inc., Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002)

4

(denying leave to amend on futility grounds); *In re Cybershop.com Sec. Litig.*, 189 F.Supp.2d 214, 237 (D.N.J. 2002) (denying leave to amend to prevent a futile amendment and to preserve the heightened pleading standards of the PSLRA). Therefore, the standard for leave to amend in Rule 15 does apply to claims under the PSLRA, but must be applied in the context of the heightened pleading standard of the PSLRA.[4]

## IV.  DISCUSSION[5]

To state a claim for violation of § 10(b) of the Securities and Exchange Act and Securities and Exchange Commission Rule 10(b)-5, a plaintiff must allege facts sufficient to accomplish the following: (1) "establish that defendant made a materially false or misleading statement or omitted to state a material fact necessary to make a statement not misleading," (2) "establish that defendant acted with scienter," (3) show "plaintiff's reliance on defendants misstatement," and (4) "satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."[6] *In re Burlington Coat*

---

[4] Its is clear that because of the heightened pleading burden under the PSLRA, judges should not "liberally grant[ ] leave to amend on a limitless basis." *In re Cybershop.com*, 189 F. Supp. 2d at 237; *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1333 (3d Cir. 2002) (noting that the objectives of the Reform Act "would be thwarted if . . . plaintiffs were liberally permitted leave to amend again"); *In re Champion Enterprises, Inc., Sec. Litig.*, 145 F. Supp. 2d 871, 872-73 (E.D. Mich. 2001) (denying leave to amend, stating that the "Reform Act is meaningless" if a judge must allow repeated amendments to deficient pleadings).

[5] In addition to the arguments presented below, Defendants assert that Brashears's claim is barred by the statute of limitations. (D.I. 44 at 13.) Because I am denying Brashears's motion for leave to amend his complaint on other grounds, it is not necessary to address that argument.

[6] Leave to amend should be granted when the complaint was dismissed solely on grounds of failure to plead with particularity under Federal Rule of Civil Procedure

5

*Factory*, 114 F.3d at 1417. Additionally, a plaintiff must allege economic loss and loss causation. 15 U.S.C. § 78u-4(b)(4); *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1631 (2005).

    A.    <u>Materially False or Misleading Statement or Omission</u>

To state a claim either that Defendants made an untrue statement or omitted to state a material fact, Brashears must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. 78u-4(b)(1). Rather than alleging that Defendants made affirmative misleading statements, Brashears alleges Defendants omitted crucial information in the materials that were provided to potential policy holders. (D.I. 39 at ¶¶ 74-91.) Brashears claims that the marketing materials and Prospectus provided to customers by Defendants did not fully inform customers of the different policy and rider options available, and the different commissions that accompanied each. (*Id.* at ¶¶ 74, 79, 80, 85.) Specifically, Brashears claims that the AIB rider was mentioned, but not described, in the materials provided by Defendants, and that Defendants' agents had been instructed not to provide information about such a rider to prospective customers. (*Id.* at ¶¶ 79, 81, 84.)

---

9(b). *In re Burlington Coat Factory*, 114 F.3d at 1434. Brashears's First Amended Complaint was dismissed partially on grounds of failure to plead with particularity under Rule 9(b). Although he has endeavored to correct that flaw, he has failed to correct other deficiencies in his complaint. As discussed below, even the more specific allegations of the proposed Second Amended Complaint fail to sufficiently allege a materially false or misleading statement or omission, or loss causation. Therefore, Brashears's motion for leave to amend will be denied.

With respect to the marketing materials provided to potential policy purchasers, Brashears alleges that Defendants did not mention the availability of the AIB rider in the list of available riders. (D.I. 39 at ¶ 74.) Further, Brashears claims that the marketing materials did not inform potential policy holders that commissions were only paid by the policy holder on the base portion of the policy, and not the rider. (*Id.* at ¶¶ 78-80.)

Additionally, Brashears alleges that the Prospectus fails to disclose information relevant to the decision of what policy to purchase. Brashears acknowledges that the Prospectus does disclose the availability of the AIB rider. (D.I. 39 at ¶ 84.) However, Brashears claims that the Prospectus directs potential customers to "consult with your agent before buying an AIB rider." (*Id.*) Brashears further claims that the Prospectus could have disclosed relevant material information, but that instead Defendants directed potential policy holders to their agents, who had already been instructed not to disclose the relevant information unless a sale was threatened. (*Id.*) Additionally, Brashears claims that customers are never told how commissions are calculated. (*Id.* at ¶ 85.) He alleges that, although the Prospectus states that the AIB Rider is available, and that its cost is "generally . . . lower than the current cost of insurance rates on the Policy's net amount of risk," this is not enough to fully inform the consumer of the cost savings of the AIB rider. (*Id.* at ¶ 86.) Finally, Brashears alleges that none of the information that he says is missing from the Prospectus and marketing materials is disclosed by the actual policy a customer receives once he or she decides to purchase a policy. (*Id.* at ¶ 89.)

There are two problems with Brashears's allegations. First, although Brashears alleges that Defendants did not disclose the availability of the AIB rider in the marketing materials, and that this was a material omission, he in fact purchased the AIB rider on his policy. (D.I. 25, Exhibit B at PROV0004.)[7] Brashears thus both knew about the AIB rider, and knew enough to purchase it.[8] Second, Brashears continues to allege that there is a higher and lower cost version of the same insurance policy (see, e.g., D.I. 39 at ¶ 4), despite the fact that the Prospectus discloses that the base policy and AIB rider are different coverage options with different costs and benefits. (D.I. 25, Exhibit A at 26, 49.) Again, the Prospectus states that "the current cost of insurance rates for [the AIB] rider are lower than the current cost of insurance rates on the Policy's net amount at risk" (D.I. 25, Exhibit A at 26), and also informs prospective customers that "the AIB rider has no cash or loan value," unlike the base policy. (D.I. 25, Exhibit A at 49.) As a

---

[7] Documents that form the basis of the plaintiff's claim, such as Brashears's insurance policy and the Prospectus, are properly considered as part of a motion to dismiss, even if not attached to the complaint. See, e.g., In re Westinghouse Sec. Litig., 90 F.3d 696, 707 (3d Cir. 1996); In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 368, n.9 (3d Cir. 1993).

[8] Brashears continues to allege, despite the fact that he purchased a policy with an AIB rider in 2000 (D.I. 25, Exhibit B at PROV0002-0004), that he was not aware of the availability of that rider until 2002. (D.I. 39 at ¶ 91.) However, he claims that he was damaged, despite his purchase of the AIB rider, because he was not aware of the potential cost-savings available with the term-style coverage of the AIB rider. (Id. at 85-90.) That argument does not answer, however, the fundamental point that he was not deceived with respect to the existence of the rider, and he knew enough to decide to purchase it. To the extent his argument in this regard has relevance, it is to his assertion that there were high and low cost versions of the policy. But, the fact that he actually purchased a base policy with an AIB rider undermines the argument that two policy versions were available. Instead, it highlights the conclusion I reached in dismissing the First Amended Complaint, that there are a variety of coverage options, with varying costs and benefits.

result, Brashears allegations show no more than that Defendants did not disclose every possible combination of the base policy and various riders and the exact cost of each combination. Although Brashears has more specifically pointed out the omissions that he claims are misleading, he has done nothing to show that there are higher and lower cost versions of the same policy. Therefore, Brashears's Second Amended Complaint would not survive a Rule 12(b)(6) motion to dismiss, and is futile.

    B.    <u>Economic Loss and Loss Causation</u>

In order to succeed on his claim for violations of § 10(b) and Rule 10(b)-5, Brashears must allege facts to show that the alleged material misrepresentation or omission caused him economic loss. *See Dura*, 125 S. Ct. at 1631. Defendants argue that Brashears has not adequately pled economic loss in his complaint and that he should be denied leave to amend on that ground.[9] (D.I. 44 at 14-16; D.I. 50 at 1-2.) Brashears, on the other hand, claims that his allegation in the complaint that he

---

[9] Defendants cite *Dura Pharmaceuticals v. Broudo*, 125 S. Ct. 1627, to support their position that Brashears has not adequately alleged loss or loss causation. (D.I. 50 at 1-2.) In *Dura Pharmaceuticals*, the plaintiffs claimed that the defendants had committed securities fraud, alleging that the defendants false statements inflated the price of Dura Pharmaceuticals stock on the dates on which the plaintiffs purchased that stock. 125 S. Ct. at 1629-30. With respect to loss causation, plaintiffs alleged only that they "paid artificially inflated prices for Dura's securities" and suffered damages as a result. *Id.* at 1630. The Supreme Court ruled that it was not enough for plaintiffs to "establish loss causation [by showing] that the price on the date of purchase was inflated because of the misrepresentation," since even if plaintiffs had purchased stock at an inflated price, it was possible that the misrepresentation would not lead to any loss. *Id.* at 1630-31. The instant situation is distinguishable from *Dura* on its facts, as the variable life insurance policies at issue here are quite different in nature from the publicly-traded stock at issue in that case. Because of this difference, the reasoning of *Dura* is not applicable.

9

purchased a higher cost life insurance policy from Defendants when a lower cost one was available is sufficient to allege his loss. (D.I. 46 at 17-18.)

Brashears's complaint does not adequately allege economic loss or loss causation. To show economic loss, a plaintiff must demonstrate that, but for the actions of the wrongdoer, he would have been in an economically better position than he currently is. *Cf. Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 178 n.19 (3d Cir. 2001) (the "correct measure of damages ... is the difference between the fair value of all that the (plaintiff) received and the fair value of what he would have received had there been no fraudulent conduct.") Showing that he is merely in a different, though not necessarily worse, economic position is not enough. Here, Brashears alleges that Defendants' life insurance base policy has higher costs associated with it, largely because of higher commissions, than the AIB rider does. (D.I. 39 at ¶¶ 84-88.) He alleges that Defendants caused this loss by not fully informing prospective customers about the different costs associated with the AIB rider, such that he and other customers purchased a policy without a rider at a higher cost to them because of increased commissions. (*Id.*)

Despite these allegations, there are no facts alleged that show why Brashears would have been better off if he had been given more information about the AIB rider. As has been stated before, the base policy and the AIB rider provide different benefits to the policy holder. (D.I. 44 at 7; D.I. 38 at 12-13.) For example, the Prospectus discloses that, unlike the base policy, the AIB rider has "no cash or loan value." (D.I. 25, Exhibit A at 49.) Additionally, the AIB rider can be canceled separately from the Policy, and has no surrender charge. (*Id.*) As a result, the multiple policy options

create, in effect, different products, and Brashears received the product he purchased, with all of the accompanying benefits. Brashears has simply alleged facts showing that he is in a different position than he would have been, rather than facts showing that he is in a worse economic position.

Furthermore, rather than making allegations that support his own actual economic loss, Brashears, in both his First and his proposed Second Amended Complaint, relies instead on the hypothetical economic loss of a hypothetical policyholder. (D.I. 39 at ¶¶ 18, 72; D.I. 6 at ¶¶ 6, 32.) His allegations, therefore, are not enough to show economic loss. Because he cannot show that he suffered any economic harm, he also has failed to show that Defendants purported representations caused him economic harm, as is required to show loss causation. As a result, Brashears's amended complaint insufficiently alleges economic loss and loss causation, and leave to amend his complaint would be futile.[10]

## V.  CONCLUSION

Accordingly, Brashears's motion for leave to file a second amended complaint (D.I. 39) will be denied. An appropriate order will follow

---

[10] Brashears, as a purported class representative, attempts to bring this action on behalf of himself and the class of people similarly situated. The Supreme Court has "repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations omitted). There is a significant question, even if there were a claim to be made by this purported class of Defendants' customers, whether Mr. Brashears would be an appropriate class representative, as he actually purchased the allegedly undisclosed AIB rider.

11